UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN A. BRUBAKER, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 4995 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| HARTFORD LIFE AND ACCIDENT INSURANCE | ) | |
| CO. D/B/A THE HARTFORD, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kathleen A. Brubaker brought this suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Hartford Life and Accident Insurance Company, challenging its termination of long-term disability benefits allegedly due to her under an employer-sponsored plan. Doc. 1. Brubaker moves the court to (1) determine the standard that will govern its review of Hartford's termination decision and (2) grant her leave to take discovery. Doc. 14. The court will apply the arbitrary and capricious standard, and Brubaker will be permitted to take limited discovery concerning what she alleges is the conflict of interest that infected Hartford's decision.

**Background**

Brubaker worked for Quad Graphics, Inc., until early May 2015. Doc. 1 at ¶ 16. At all relevant times, Brubaker's workplace and residence were in Illinois. Doc. 14 at ¶ 5. Quad Graphics is headquartered and incorporated in Wisconsin and maintains offices throughout the world. Doc. 16 at 5.

1

Brubaker was insured for disability benefits under the Quad Graphics disability plan ("the Plan"). Doc. 1 at ¶ 12. The insurance policy ("the Policy") by which the Plan was issued to Quad Graphics included a clause providing that Hartford would "have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." Doc. 16-1 at 22. The Policy listed the "Policyholder" as Quad Graphics and the "Place of Delivery" as Wisconsin, and it covered all Quad Graphics employees who were citizens or permanent residents of the United States. *Id*. at 8, 10, 43. Hartford issued and paid benefits under the Policy, and it administered the Policy as well. Doc. 1 at ¶ 15.

Upon ceasing work, Brubaker filed a claim for long-term disability benefits, which Hartford approved in August 2015. *Id*. at ¶ 17. Hartford paid long-term disability benefits to Brubaker from August 2015 through August 2017, at which point it terminated the benefits. *Id*. at ¶ 18. Brubaker asked Hartford to reconsider, *id*. at ¶ 19, and Hartford denied her appeal in March 2018, Doc. 17 at 6.

## Discussion

### I. Standard of Review

Settled precedent holds that the "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case "a deferential standard of review" is applied. *Conkright v. Frommert*, 559 U.S. 506, 512 (2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Under deferential review, "the plan's decision must be sustained unless arbitrary and capricious," with the court's review "limited to the administrative record." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

Brubaker does not dispute that the Policy has a discretionary clause. Doc. 15 at 2. This ordinarily would result in deferential review of Hartford's termination decision. But the matter is complicated by the fact that an Illinois regulation prohibits discretionary clauses in disability plans and other health insurance contracts that are "offered or issued in this State":

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

50 Ill. Admin. Code § 2001.3 (2010). The express purpose of § 2001.3 is to ensure that courts apply a *de novo* standard in ERISA cases where the denial of benefits is challenged. *See* 29 Ill. Reg. 10172, 10173 ("The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard."); *see also Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 886-91 (7th Cir. 2015) (holding that ERISA does not preempt § 2001.3). So, if the Policy was "offered or issued in" Illinois, § 2003.1 would govern and require the court to review *de novo* Hartford's termination decision. *Cf. Krolnik*, 570 F.3d at 843 (observing that "'*de novo* review' is a misleading phrase," and suggesting that it be replaced by "'independent decision'").

The Policy, however, was not "offered or issued in" Illinois. The Policy's named policyholder is Quad Graphics, which is headquartered and incorporated in Wisconsin. Doc. 16-1 at 8, 35. The Policy lists its "Place of Delivery" as Wisconsin. *Id*. at 43. Given these undisputed facts and the ordinary meaning of the words "offer," "issue," and "in," it cannot be said that Hartford "offered or issued" the Policy "in" Illinois. *See Meyer v. Group Long Term*

*Disability Plan for Emps. of Edward D. Jones & Co., L.P.*, 2018 WL 3186923, at *2 (C.D. Ill. June 28, 2018) (holding that § 2001.3 did not govern a policy that was issued and delivered to the employee policyholder in Missouri); *Nasalroad v. Standard Ins. Co.*, 182 F. Supp. 3d 879, 880-81 (S.D. Ill. 2016) (same, where the policy was delivered to the employer policyholder in Pennsylvania); *Rogers v. Reliance Standard Life Ins. Co.*, 2015 WL 2148406, at *7 (N.D. Ill. May 6, 2015) (same, where the policy stated it was delivered in Texas to the Texas-based employer policyholder).

True enough, the Policy broadly provides coverage to Quad Graphics employees "who are citizens or legal residents of the United States," Doc. 16-1 at 10, 42, including Brubaker, who resided in Illinois and worked at a Quad Graphics facility in Illinois, Doc. 1 at ¶ 11; Doc. 15 at 3. But the mere fact that the Policy covered an employee who lived and worked in Illinois does not mean that it was "offered or issued in" Illinois, particularly given that "[t]here is nothing in the record before the Court suggesting that any of the negotiations or policy decisions regarding the policy at issue occurred in Illinois." *Meyer*, 2018 WL 3186923, at *2; *see also Nasalroad*, 182 F. Supp. 3d at 880-81 (similar); *Rogers*, 2015 WL 2148406, at *7 (rejecting the proposition that § 2001.3 applied simply because the plaintiff "was hired in Illinois, became insured under the Policy while working and living in Illinois, and received notice of benefit termination while living in Illinois").

The two decisions Brubaker cites to support the contrary result are inapposite. In *Curtis v. Hartford Life and Accident Insurance Company*, 2012 WL 138608 (N.D. Ill. Jan. 18, 2012), the employer policyholder—Children's Memorial Hospital—was headquartered in Illinois and negotiated the policy and paid premiums from Illinois. *Id*. at *8. Given these circumstances, the court held that the policy was "offered" in Illinois even though, as a technical matter, the

4

insurer's relationship with Children's Memorial was mediated through a Delaware trust. *Ibid*. (explaining that the contrary result would "elevate[] form over substance"). And in *Barrett v. Life Insurance Company of North America*, 868 F. Supp. 2d 779 (N.D. Ill. 2012), the court (anticipating *Fontaine*) held only that ERISA does not preempt § 2001.3. *Id*. at 780.

Accordingly, § 2001.3 does not govern the Policy, which means that the Plan's discretionary clause remains in place, which in turn means that the court will review Hartford's benefits termination decision under the arbitrary and capricious standard.

## II. Discovery

Brubaker contends that even if the arbitrary and capricious standard applies, she is entitled to discovery to explore whether a conflict of interest infected Hartford's decision to terminate her benefits. Doc. 15 at 7-10. As a general rule, where a plan administrator's decision is subject to arbitrary and capricious review, the court's analysis is limited to the administrative record and discovery is not permitted. *See Krolnik*, 570 F.3d at 843 ("When review is deferential—when the plan's decision must be sustained unless arbitrary and capricious—*then* review is limited to the administrative record."); *Schrock v. Aetna Life Ins. Co.*, 2016 WL 3693428, at *2 (N.D. Ill. July 12, 2016) ("It is well-established that in ERISA cases discovery is generally not permitted and judicial review is limited to the administrative record.") (citing *Krolnik*, 570 F.3d at 843). That said, under certain circumstances, the court may allow "limited discovery" into whether "conflicts of interest" may have "contributed to an unjustifiable denial of benefits." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814-15 (7th Cir. 2006).

As the Supreme Court recognized in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), where (as here) "the entity that administers the plan … both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," the entity's "dual role creates a conflict of interest[] that a reviewing court should consider … as a factor in determining

5

whether the plan administrator has abused its discretion in denying benefits." *Id*. at 108; *see also Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 440 (7th Cir. 2019) ("The Supreme Court and [the Seventh Circuit] have clearly and consistently held that a conflict of interest is present where the administrator has both the authority to determine benefits and the obligation to pay them, and that such a conflict is weighed as a factor in determining whether there is an abuse of discretion, and can act as a tiebreaker when the other factors are closely balanced."). And as the Seventh Circuit observed in the wake of *Glenn*, "to determine the likelihood and gravity of a conflict of interest might require discovery to identify a specific conflict of interest or instance of misconduct." *Dennison v. MONY Life Ret. Income Sec. Plan for Emps.*, 710 F.3d 741, 747 (7th Cir. 2013) (internal quotation marks omitted).

The mere presence of the structural conflict inherent in the "plan administrator ha[ving] both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due," standing alone, is insufficient to open the door to discovery. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 364-65 (7th Cir. 2017) (internal quotation marks omitted) (affirming the district court's denial of discovery even though that structural conflict was present); *see also Allen v. Lilly Extended Disability Plan*, 2018 WL 691638, at *4 (S.D. Ind. Feb. 2, 2018) (rejecting the proposition "that a structural conflict of interest alone is sufficient to trigger discovery"), *appeal docketed*, No. 19-1843 (7th Cir. Apr. 30, 2019). Instead, something more indicating that the conflict manifested itself in a decision adverse to the claimant is required. *See Schrock*, 2016 WL 3693428, at *3 (noting the distinction between "run-of-the-mill" cases alleging mere structural conflicts, "for which no conflict-related discovery is permitted," and "exceptional" cases "raising a suspicion of bias or misconduct," for which courts may permit "limited discovery").

That something more is present here. Brubaker asserts, and Hartford does not dispute, that the Social Security Administration found her disabled and—significantly—that Hartford "required [her] to file and pursue" the Social Security disability claim and "referred her to [its] 'partner' non-attorney representative, The Advocator Group, to assist her with the … claim." Doc. 15 at 9. Earlier this summer, the Seventh Circuit held that precisely that circumstance— where the plan administrator "takes inconsistent positions in the Social Security disability proceedings and its own disability determination"—can result in "a higher likelihood that [the administrator's structural conflict] affected the benefits decision." *Lacko*, 926 F.3d at 440 (internal quotation marks omitted). As the court explained:

> [W]here the administrator assists the claimant in obtaining Social Security disability benefits, arguing that she is unable to engage in any work, and then after obtaining those benefits, denies disability benefits under its own plan, the self-dealing can signal that the administrator is acting in its own interests rather than that of the claimant. The Plan benefits in such a situation because it is often entitled to recover some of the Social Security benefit awarded to the claimant, and it avoids the payment of money to the claimant in denying benefits under its own plan. We have recognized that this scenario justified the reviewing court in giving more weight to the conflict because the seemingly inconsistent positions taken by the insurer were both financially advantageous to the insurer. Such concordance between the actions and positions taken by the administrator and its own financial interest suggest a higher likelihood that the conflict of interest affected the benefits decision.

*Ibid*. (citations and internal quotation marks omitted).

This is not to say that Hartford's decision to terminate Brubaker's benefits was in fact infected by a conflict of interest. Rather, it is to say only that Brubaker has shown enough at this point to obtain discovery on the conflict issue. Moreover, it bears mention that "even when some discovery is necessary in a particular case to explore a conflict of interest, trial courts retain broad discretion to limit and manage discovery under [Civil] Rule 26 … ." *Dennison*, 710 F.3d at 747. The court will leave it to the parties in the first instance to agree upon a discovery plan and of course will remain available to resolve any disputes that arise.

**Conclusion**

Hartford's decision to terminate Brubaker's benefits will be reviewed under the arbitrary and capricious standard. Brubaker is entitled to discovery on the conflict of interest issue. By August 29, 2019, the parties shall file a status report setting forth their joint proposal or, absent an agreement, competing proposals for discovery regarding that issue.

August 15, 2019

_____
United States District Judge